IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 10-cv-02750-WDM-MJW

ELECTRONIC SOLUTIONS, INC.,
HUNTER DOUGLAS, INC., and
DRAPER, INC.

    Plaintiffs,

v.

MECHOSHADE SYSTEMS, INC.,

    Defendant.

**ORDER ON MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO TRANSFER**

Miller, J.

This case is before me on Defendant's Motion to Dismiss, or in the Alternative, to Transfer to the United States District Court of the District of Arizona, filed December 29, 2010 (ECF No. 13). Plaintiffs oppose the relief requested. I have reviewed the parties' arguments and exhibits and find that oral argument is not required. Based upon my conclusion that I do not have personal jurisdiction in this case, I will grant the motion.

Background

For purposes of this order, I accept the allegations set forth in the complaint filed by plaintiffs Electronic Solutions, Inc. (ESI), Hunter Douglas, Inc. (Hunter Douglas), and Draper, Inc. (Draper) (collectively, "Plaintiffs"). This declaratory judgment action asks that I determine the validity of United States Patent Number 7,417,397 (the '397 patent), held by defendant MechoShade Systems, Inc. (MechoShade), and whether the patent is

infringed by certain products manufactured sold by Plaintiffs.

ESI is a Colorado-based company and a subsidiary of Hunter Douglas. It is in the business of designing, manufacturing, and selling motor controls for such products as motorized window coverings, projection screens, and retractable awnings. Complaint, ¶ 10 (ECF No. 1). ESI designed and manufactured Pilot RQ, a software and hardware system that can remotely control motorized window shades to take into account the position of the sun in relation to a building. *Id.* at ¶¶ 14, 15.

Hunter Douglas is a Delaware corporation with its principle place of business in New Jersey. It manufactures and sells home and commercial window coverings. *Id.* at ¶ 11.

Draper is an Indiana corporation with expertise in providing retractable mounts and motors for the raising and lowering of screens and window shades. Draper's "SolarFlex" product incorporates ESI's Pilot RQ system. *Id.* at ¶¶ 12, 14.

MechoShade, a New York corporation, is in competition with Plaintiffs, offering its own manual, motorized, and automated solar shading products. *Id.* at 13. It owns the '397 patent, which covers an automated system to raise and lower window shades according to the position of the sun.

According to the Complaint, in August 2010, MechoShade's president, Joel Berman, contacted Draper via telephone to discuss the SolarFlex product and whether it infringes MechoShade's '397 patent. *Id.* at ¶ 18. In September 2010, Mr. Berman made a similar telephone call to ESI, connecting the Pilot RQ software to the '397 patent and demanding that ESI stop offering and selling the system to Draper and other customers. ESI refused this demand. *Id.* at ¶¶ 19-21. Berman and MechoShade followed these telephone calls by contacting customers and potential customers of ESI and Draper–none in Colorado–

alleging infringement of its '397 patent and threatening legal action if the customers purchased the products at issue. *Id.* at ¶¶ 22-23.

Believing that litigation was imminent, Plaintiffs filed their Complaint. Plaintiffs seek declaratory relief finding (1) their products do not infringe the '397 patent and (2) the '397 patent is invalid.

Several hours after filing this lawsuit, Draper filed a complaint in Indiana against MechoShade seeking declaratory relief concerning a second patent held by MechoShade, United States Patent Number 5,123,428 (the '428 patent).[1] Draper asks that the court in Indiana declare, *inter alia*, that the '428 patent is invalid and that Draper does not infringe that patent.

MechoShade asserts in its Motion to Dismiss or to Transfer that, at the time Draper filed its complaints in this Court and in Indiana, Draper and MechoShade were engaged in settlement discussions and had executed a written Rule 408 Settlement Negotiation Agreement precluding the use of confidential information for any purpose other than to further the settlement discussions. Motion to Dismiss, Exhibit 5 (Exhibit A thereto) (ECF No. 13-5). According to Mechoshade, it had also reached an oral agreement with Draper that neither party would file a lawsuit against the other while the settlement discussions were ongoing.

Two days after the current complaint was filed, MechoShade filed suit in Arizona,

---

[1] ESI and Hunter Douglas are not parties to the Indiana action. Joel Berman Associates, Inc. is named as a defendant, but according to the Motion to Dismiss, this company owns no rights to the '428 patent.
The '428 patent describes a bracket used to manually raise and lower window shades.

naming Draper, ESI, and Hunter Douglas as defendants. MechoShade's complaint sets forth claims for breach of contract, infringement of the '428 patent, and infringement of the '397 patent. MechoShade also seeks declaratory relief related to both patents on issues of infringement and validity.[2] The breach of contract claim is based on allegations that Draper violated the parties' oral agreement not to initiate litigation during the settlement negotiations by filing the Colorado and Indiana lawsuits and that Draper breached the written Rule 408 agreement by using confidential communications from the settlement efforts to establish a case or controversy in those lawsuits.

In its Motion to Dismiss or to Transfer, MechoShade argues this case should be dismissed for lack of personal jurisdiction or for improper venue, that I should exercise my discretion to decline declaratory judgment jurisdiction, that I lack subject matter jurisdiction over the claims against Hunter Douglas, and that this case should be transferred to the District of Arizona pursuant to 28 U.S.C. § 1404(a) and 1406(a). Because I conclude there is no personal jurisdiction over MechoShade, I do not reach the parties' other arguments.

### Discussion

1. Personal Jurisdiction

    a. Standard of Review

In resolving the question of whether personal jurisdiction exists in this patent case, I apply Federal Circuit law. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). *See also Electronics for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348

---

[2] Several of the claims for declaratory relief cover issues of trade dress. The complaint was later amended to add claims for unfair competition and violation of the Lanham Act. Motion to Dismiss, Exhibit 6 (ECF No. 13-8).

(Fed. Cir. 2003) (Federal Circuit law applies "where the personal jurisdictional inquiry is "intimately involved with the substance of the patent laws" even in the context of a declaratory judgment action where defendant is the patentee) (citation omitted). Plaintiffs must make a *prima facie* showing that MechoShade is subject to personal jurisdiction in Colorado. *Autogenomics*, 566 F.3d at 1017. In addressing the issue in the context of a motion to dismiss, I will accept the uncontroverted allegations in the complaint as true and resolve factual conflicts in the parties' affidavits in the Plaintiffs' favor. *Electronics for Imaging, Inc.*, 340 F.3d at 1349. At the same time, however, Plaintiffs are "entitled to only those inferences that are reasonable." *Autogenomics*, 566 F.3d at 1018.

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Id.*, at 1017. Because Colorado's long-arm statute reaches "to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution," *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 459, 448 P.2d 783, 784 (1968), I need only conduct the due process analysis. *Autogenomics*, 566 F.3d at 1017.

"The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to asset in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). To satisfy due process requirements, Plaintiffs must show that MechoShade has minimum contacts with the State of Colorado "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 414 (citations omitted). Here, Plaintiffs argue that MechoShade's "continuous and systematic" contacts with Colorado confer general personal

jurisdiction even though the cause of action does not arise out of those contacts.[3] *Autogenomics*, 566 F.3d at 1017. *See also Helicopteros*, 466 U.S. at 414 ("Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation").

    b.    Discussion

Plaintiffs allege that MechoShade's contacts with Colorado are "substantial and ongoing." Response to Motion to Dismiss at 12 (ECF No. 31). Based primarily on internet searches performed by Evan Rothstein, an attorney representing Plaintiffs, Plaintiffs allege that Mechoshade: (1) offers its products throughout Colorado, (2) has at least five

---

[3] In contrast to general jurisdiction, specific jurisdiction exists where "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414. In the context of a declaratory judgment action involving a patent, the relevant contacts with the forum state for purposes of specific jurisdiction are those "which relate in some material way to the enforcement or the defense of the patent." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008). Plaintiffs do not expressly argue that specific jurisdiction over MechoShade is proper in this case. In their Response to the Motion to Dismiss, they assert that, although MechoShade's threats of infringement and litigation were to non-Colorado customers, the effects of the threats were felt by ESI in Colorado. Response at 14 (ECF No. 31). To the extent this statement may be construed as an argument that specific jurisdiction is proper in this case, I disagree. MechoShade's alleged threats were not made to a Colorado resident and, even if the effects of those actions were felt in Colorado, the indirect nature of that action falls short of the activities contemplated by the Federal Circuit in *Avocent.* 552 F.3d at 1334-1336 (examples of other activities related to enforcement or defense of patent include "initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum"). On the record before me, I cannot find that MechoShade purposefully directed any activities related to enforcement or defense of its patent toward residents of Colorado nor can I conclude that assertion of personal jurisdiction based on ESI's "feeling effects" in Colorado would be reasonable or fair.

distributors in the state (one of which advertises itself on a website as an "authorized dealer"), (3) has sent corporate representatives to Colorado trade shows, (4) has provided products for at least one construction project in Denver, (5) provides contact information for a Denver sales company in response to internet inquiries, and (6) lists a local address in Longmont, Colorado.  Plaintiffs point out that MechoShade has annual nationwide sales of between $50 and $100 million and gleans from the above contacts that MechoShade focuses on the Colorado market and has "substantial sales" in Colorado.

Although Mr. Rothstein provided a declaration attesting to the internet sites where he found references to MechoShade in Colorado,[4] Plaintiffs' conclusions about MechoShade's contacts for purposes of general jurisdiction are couched in terms of supposition.  Plaintiffs assert that "*one can imagine* that MechoShade will prove to have substantial sales in this state every year, *likely* in the millions of dollars."  Response, at 14 (emphasis added).  They contend that "*it is likely*" that MechoShade has more than five distributors and other construction projects utilizing its products.  *Id* (emphasis added). They analogize MechoShade's presence in Colorado to that of the defendant in *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369 (Fed. Cir. 2000).  In that case, the Federal Circuit found general jurisdiction was proper where the defendant had "millions of dollars of sales of lighting products" and a "broad distributorship network" in the forum state.  *Id.* at 1375.

In its Reply, MechoShade provides a declaration from its chairman and CEO, Joel

---

[4]     There is no affidavit evidence of any distributor agreements between MechoShade and Colorado companies, nor do Plaintiffs provide any indication of the amount of revenue MechoShade earns from sales of its products in Colorado.

Berman.  Mr. Berman testifies that the Longmont address is the personal residence of an ex-employee of MechoShade and is not owned or leased by MechoShade as a place of business.  Declaration of Joel Berman, ¶ 2 (ECF No. 42-1).  Mr. Berman further declares that the five listed "distributors" are third parties who acted unilaterally in offering MechoShade products and that there is no record of three of those companies ever having sold a MechoShade product in Colorado.  He states that MechoShade's sales in Colorado for the past two years have been approximately 1.5% of its gross annual sales.

Although Plaintiff's *prima facie* burden of demonstrating that the exercise of personal jurisdiction over MechoShade will not offend due process is a light one, I find they have not met this burden here.  The alleged contacts between MechoShade and Colorado fall far short of the "millions of dollars" and "broad distributor network" of *LSI Indus. Inc.*  Rather, MechoShade's contacts are closely analogous to those found insufficient for general jurisdiction in *Autogenomics*.  There, the defendant, a British company, was not registered to do business in California and did not have any facilities, assets, employees, or agents there.  It had contacted the plaintiff in California regarding potential infringement by the plaintiff's product, and two of defendant's representatives had flown to California to discuss a licensing arrangement with defendant.  The plaintiff presented evidence that the defendant had entered into non-exclusive licenses with "about ten" California companies, had reached a "collaborative agreement" with a California company allowing defendant to purchase products from that company, had attended three conference/trade shows in California, and had sales to California companies constituting approximately one percent of its annual revenue for one year.  Like Plaintiffs here, the plaintiff in *Autogenomics* alleged, without evidentiary support, that the defendant "very likely offered" services for

other California companies. The defendant countered with an "uncontested declaration" that some of the companies listed had a license agreement with the defendant but were not customers. 566 F.3d at 1014-16. The Federal Circuit held these contacts were not continuous or systematic enough to support general personal jurisdiction. *See also Helicopteros*, 466 U.S. at 411 (no general jurisdiction where foreign company was not authorized to do business in the forum, had no agent for service of process there, and had not sold any products that reached the forum despite facts that, over a seven-year period of time, the company purchased approximately eighty percent of its fleet of helicopters in Texas, sent its prospective pilots to Texas for training and its management and maintenance personnel there for consultations, and received over $5 million in payments from a Texas bank).

Here, MechoShade contacted ESI about potential infringement, attended two Colorado trade shows over a period of seven years, and had sales in Colorado of approximately 1.5% of its annual revenues for two years. At least five Colorado businesses offer MechoShade products to their customers, but there is no evidence that MechoShade did anything with respect to these businesses other than place its products in the stream of commerce or that the companies' offer of MechoShade products is anything other than a unilateral sales decision on the part of the companies.[5] *See Helicopteros*, 466 U.S. at

---

[5] As noted above, Plaintiffs' affidavits support only what content may be found on the internet; they do not testify to MechoShade's sales in Colorado or whether it has authorized any company here to distribute its products. The evidence presented in MechoShade's declaration of Joel Berman is, in essence, uncontroverted. I conclude there is no factual dispute presented by the parties' affidavits that I must resolve in Plaintiffs' favor.

417 (unilateral activity of a third person "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). *Cf. Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1331 (Fed. Cir. 2008) (stating "it remains unclear whether contacts based solely on the 'stream of commerce' may suffice to establish *general* jurisdiction" and noting that the Fifth Circuit has held such contacts do not support a finding of general personal jurisdiction) (emphasis in original; citations omitted).

I conclude that MechoShade does not have "continuous and systematic" contacts with the state of Colorado necessary for the exercise of general personal jurisdiction.

Accordingly, it is ORDERED:

1. Defendant's Motion to Dismiss, or in the Alternative, to Transfer to the United States District Court for the District of Arizona, filed December 29, 2010 (ECF No. 13) is granted.

2. This case is dismissed without prejudice for lack of personal jurisdiction.

DATED at Denver, Colorado, on May 9, 2011.

BY THE COURT:

s/ Walker D. Miller
United States District Judge